11/18/2019 5:32 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 38596310
By: Marcella Hill
Filed: 11/18/2019 5:32 PM

CAUSE NO. _____

| | | |
|---|---|---|
| **FAST TRAC TRANSPORTATION, LLC** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | |
| | § | **OF HARRIS COUNTY, TEXAS** |
| | § | |
| **CAROLINA CASUALTY INSURANCE COMPANY** | § | |
| | § | |
| *Defendant.* | § | _____ **JUDICIAL DISTRICT** |

**PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES**

Plaintiff, **FAST TRAC TRANSPORTATION, LLC** files this *Original Petition* against Defendant, **CAROLINA CASUALTY INSURANCE COMPANY**, and in support thereof would show the following:

## I.
## DISCOVERY LEVEL

1. Discovery in this case is intended to be conducted under Level 2. Fast Trac affirmatively pleads that this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169 because it seeks relief over $100,000.

2. Fast Trac seeks monetary relief aggregating between $200,000 to $1,000,000; alternatively, it seeks over $1,000,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees.

## II.
## PARTIES AND SERVICE

3. Fast Trac is a domestic for-profit limited liability company doing business in Harris County, Texas.

4. Carolina is a foreign insurer licensed to do business in Texas and duly registered with the Texas Department of Insurance and may be served with process through its registered

agent C.T. Corporation System, 1999 Bryan Street Suite 900, Dallas, Texas 75201-3136, or wherever they may be found.

### III.
### JURISDICTION AND VENUE

5.    This Court has jurisdiction over the parties because Carolina has numerous contacts with the State of Texas that are both general and specific to the transaction at issue in this case. Carolina transacted business in the State of Texas. The transaction at issue in this case was conducted in Texas. Carolina has availed itself of the benefits and obligations of doing business in Texas and is responsible for the services conducted in Texas on their behalf, and at their request, as further stated below.

### IV.
### AS TO ALL COUNTS

6.    Whenever in this Petition it is alleged any Party, in addition to him or herself if the Party is an individual, or any named Party if a business entity, did any act or thing, it is meant, in addition to the named Party, the officers, agents, servants, employees or representatives of that Party did such act or thing and at the time such act or thing was done, it was done with the full authorization or ratification of such Party and was done in the normal and routine course and scope of employment of that Party or one or more of that Party's respective officers, agents, servants, employees, or representatives.

7.    All pleadings are in the alternative.

8.    All conditions precedent to Fast Trac's right of recovery on each and every cause of action occurred, were performed, or were excused or waived.

### V.
### FACTS

9.    Fast Trac sought insurance coverage through Higginbotham Insurance Agency, Inc.

2

to protect its insurable interests. Higginbotham procured on behalf of and/or underwrote for Fast Trac several insurance policies, but specifically a commercial automobile policy with Carolina number 5009261 and an excess liability policy with Hallmark Specialty Insurance Company number 77HX1848A9.

10. Both the Carolina and Hallmark Policies had a policy term running from March 1, 2018 through March 1, 2019.

A. *The Carolina Policy Cancellation*

11. The Carolina Policy was a pre-paid policy and was issued in exchange for a premium payment of $273,018.00 made by Fast Trac to Higginbotham as agent of Carolina.

12. The Carolina Policy's insuring agreement reads as follows:

> IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

13. The Carolina Policy's schedules originally listed 105 covered vehicles for the entire Policy Term. The Carolina Policy, however, allowed vehicles to be added or deleted from its schedules during the Policy Term.

> **B. Owned Autos You Acquire After The Policy Begins**
> 1. If Symbols 61, 62, 63, 64, 65, 66 or 79 are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.
> 2. But, if Symbol 67 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:
>    a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and
>    b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

14. The Carolina Policy also contained a premium audit provision that reads as follows:

> 6. **Premium Audit**
> a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

15. According to this premium audit provision, the *final* premium would be computed when Carolina determines the actual exposures. The due date for the *final* premium or *retrospective* premium is the date shown as the due date on the bill. There was never a final premium calculated as the actual exposures would not be known until the end of the Policy Term, retrospectively. The Premium Audit provision of the Policy did not require additional premiums to be paid during the Policy Term.

16. The Carolina Policy's cancellation provisions state in their pertinent section as follows:

> (2) If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:
> (a) Fraud in obtaining coverage;
> (b) Failure to pay premiums when due;

17. Through the months of March to July of 2018, Fast Trac added newly acquired vehicles and deleted others. On June 21, 2018, Higginbotham issued invoices numbered 747928

4

and 747933 to Fast Trac identifying changes that had occurred in April and May of that year, respectively. Both invoices instructed Fast Trac to make checks payable to Higginbotham. There was not an actual due date on the invoices. Despite the fact that the Carolina Policy did not require additional premiums to be paid until the *final* premium was due, *retrospectively*, Fast Trac paid both invoices with checks numbered 2449 and 2514 issued on July 25 and August 9, 2018, respectively.

18. Fast Trac fully performed its obligations to Carolina to pay premiums pursuant to the Carolina Policy's terms and conditions.

19. Despite the above, on August 1, 2019 Carolina sent Fast Trac a *Notice of Cancellation* of the Carolina Policy, stating the reason to be "NON PAYMENT OF PREMIUM TO THE AGENT", meaning Higginbotham. This *Notice of Cancellation* stated that it would be effective on August 14, 2018 at 12:01 AM. Fast Trac sustained communications with Carolina requesting it to rescind its *Notice of Cancellation*, but Carolina reaffirmed its decision and finally cancelled the Carolina Policy on August 30, 2018.

20. Higginbotham thus procured and/or underwrote for Fast Trac replacement coverage with Prime Insurance issuing policy number SC18082021 at a premium cost to Fast Trac of $1,062,610.51 for a 1 year term.

21. Because of Carolina's deceptive trade practices, unfair or deceptive acts or practice in the business of insurance and breach of contract, Fast Trac paid higher premiums for its commercial automobile insurance coverage for the remainder of the Policy Term in an amount equal to $202,800.33, plus $19,578.44 in otherwise unnecessary finance charges.

22. After the dust settled, Fast Trac didn't receive a premium refund from Carolina. Having paid Carolina a total of $379,501.76 in premiums for the Carolina Policy on $294,380.93

in earned premiums, Fast Trac is injured in uncollected overpayment of premiums in the amount of $87,029.32.

23. Carolina has therefore caused damages to Fast Trac exclusively related to the Carolina Policy Cancellation totaling $309,408.09.

B. *The Hallmark Policy Cancellation*

24. Fast Trac had obtained the Hallmark Policy at the same time as the Carolina Policy at an initial pre-paid premium cost of $117,500.00. In July 25, 2018, Fast Trac paid additional premiums to Hallmark in the amount of $5,433.75 to increase the policy limits. This brought the total amount pre-paid by Fast Trac for the Hallmark Policy to $122,933.75.

25. Once Hallmark was notified that the Carolina Policy was not the underlying policy, but the Prime Policy had replaced it, it also issued a Notice of Cancellation of the Hallmark Policy. The Hallmark Policy's Notice of Cancellation was mailed to Fast Trac on September 11, 2018, with an effective date of September 29, 2018, 12:01 AM. Hallmark cancelled the Hallmark Policy because it wasn't comfortable sitting over the Prime Policy and as a direct result of Carolina's wrongful termination of the underlying Policy.

26. Finding itself without excess insurance coverage because of cancellation, Fast Trac again had to obtain replacement coverage at a disadvantage. Higginbotham procured and/or underwrote replacement excess liability coverage with Berkshire Hathaway Insurance Company ("Berkshire") issuing policy number 42-RLO-306224-01 (the "Berkshire Policy") at a premium cost to Fast Trac of $315,000.00. Fast Trac again had to finance $220,500.00 of the Berkshire Policy premium, costing it financing fees and expenses in an amount equal to $4,567.04. But for the Carolina Policy's cancellation, it would not have incurred these finance charges.

27. Because of Carolina's deceptive trade practices, unfair or deceptive acts or practice

in the business of insurance and breach of contract, Fast Trac paid higher premiums for its excess liability insurance coverage for the remainder of the Policy Term in an amount equal to $88,874.02, plus $4,567.04 in otherwise unnecessary finance charges.

28. Carolina has therefore caused damages to Fast Trac exclusively related to the Hallmark Policy Cancellation totaling $93,441.06.

## VI.
## CAUSES OF ACTION

29. All causes of action asserted herein are to be construed in addition or in the alternative to one another so as to provide Fast Trac full recourse under the Law.

A. *Deceptive Trade Practices Act*

30. Fast Trac incorporates by reference the allegations set forth above as if the same were fully set forth herein.

31. Carolina knowingly and/or intentionally engaged in one or more acts as outlined in Tex. Bus. & Com. Code § 17.46(b) and Fast Trac relied on Carolina's acts or omissions to its detriment. More specifically, Carolina:

- a. Represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Tex. Bus. & Com. Code § 17.46(b)(5) because it represented to Fast Trac that in exchange for the payment of premiums, it would afford Fast Trac commercial automobile liability coverage for the entire Policy Term. Despite Fast Trac having paid premiums, Carolina nonetheless proceeded to cancel the Carolina Policy claiming to have a contractual right to do so for non-payment of premiums.
- b. Represented that goods or services are of a particular standard, quality, or grade and are of another in violation of Tex. Bus. & Com. Code § 17.46(b)(7) because it

7

represented to Fast Trac that in exchange for the payment of premiums, it would afford Fast Trac commercial automobile liability coverage for the entire Policy Term. Despite Fast Trac having paid premiums, Carolina nonetheless proceeded to cancel the Carolina Policy claiming to have a contractual right to do so for non-payment of premiums.

c. Represented that an agreement confers or involves rights, remedies, or obligations which it does not have in violation of Tex. Bus. & Com. Code § 17.46(b)(12) because it represented to Fast that in exchange for the payment of premiums, it would afford Fast Trac commercial automobile liability coverage for the entire Policy Term. Despite Fast Trac having paid premiums, Carolina nonetheless proceeded to cancel the Carolina Policy claiming to have a contractual right to do so for non-payment of premiums.

32. Furthermore, Carolina engaged in an unconscionable action or course of action against Fast Trac. Carolina is in the business of insurance and took advantage of Fast Trac's lack of knowledge, ability, experience or capacity to a grossly unfair degree to Fast Trac's detriment. Specifically, Carolina's basis for cancelling the Carolina Policy is a pretext to cancellation when the contractual terms between the parties and Tex. Ins. Code § 551.052 didn't provide it a right to do so. Carolina's unconscionable actions were detrimental to Fast Trac, as Fast Trac has borne the full cost of obtaining replacement insurance coverage at a significant disadvantage.

33. Moreover, Carolina has made use or employment of Unfair Methods of Competition and Unfair or Deceptive Acts or Practices in violation of Tex. Ins. Code Chapter 541, as is detailed below.

34. On September 10, 2019, Fast Trac sent Carolina the statutorily required pre-suit notice. Carolina failed to respond to the notice.

35. Carolina's conduct caused injury to Fast Track for which it seeks all allowable

8

amounts of damages and attorneys' fees, which are within the jurisdictional limits of this Court. *See*, **Damages** section below.

B. *Unfair Methods of Competition and Unfair or Deceptive Acts or Practices*

36. Fast Trac incorporates by reference the allegations set forth above as if the same were fully set forth herein.

37. Carolina knowingly and/or intentionally engaged in one or more acts or practices outlined in Tex. Ins. Code. Chapter 541. More specifically, Carolina:

    a. Misrepresented the terms of the Carolina Policy and the benefits or advantages promised by the Carolina Policy in violation of Tex. Ins. Code § 541.051(1)(A) and (B) because it represented to Fast Trac that in exchange for the payment of premiums, it would afford Fast Trac commercial automobile liability coverage for the entire Policy Term. Despite Fast Trac having paid premiums, Carolina nonetheless proceeded to cancel the Carolina Policy claiming to have a contractual right to do so for non-payment of premiums.

    b. Has made untrue statements of material facts, failed to state a material fact necessary to make other statements not misleading, considering the circumstances under which the statements were made, made a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact, made a material misstatement of law and/or failed to disclose a matter required by law to be disclosed in violation of Tex. Ins. Code § 541.061 because it has represented to Fast Trac that Fast Trac hadn't paid premiums when due and claiming to have a contractual right to cancel the Carolina Policy because of non-payment of premiums. Fast Trac clearly paid premiums under the Carolina Policy.

9

38. Furthermore, Carolina has engaged in one or more acts deemed Deceptive Trade Practices as outlined in Tex. Bus. & Com. Code § 17.46(b) and to which Fast Trac relied to its detriment.

39. On September 10, 2019, Fast Trac sent Carolina the statutorily required pre-suit notice. Carolina did not respond.

40. Carolina's conduct caused injury to Fast Trac for which it seeks all allowable amounts of damages and attorneys' fees, which are within the jurisdictional limits of this Court. *See*, **Damages** section below.

C. *Breach of Contract*

41. Fast Trac incorporates by reference the allegations set forth above as if the same were fully set forth herein.

42. Fast Trac and Carolina entered into a valid and enforceable contract via the Carolina Policy. Under the terms of the Policy, Carolina would afford Fast Trac commercial automobile liability coverage for the entire Policy Term.

43. Carolina has materially breached the Carolina Policy because despite Fast Trac having paid premiums, Carolina nonetheless proceeded to claim non-payment of premiums when due and cancel the Carolina Policy when it had no such contractual right.

44. Carolina's breach of the Policy's terms caused injury to Fast Trac for which it seeks all allowable amounts of damages and attorneys' fees as claimed herein, which are within the jurisdictional limits of this Court. *See*, **Damages** section below.

D. *Breach of Duty of Good Faith and Fair Dealing*

45. Fast Trac incorporates by reference the allegations set forth above as if the same were fully set forth herein.

46. Fast Trac and Carolina entered into a valid and enforceable contract via the Policy.

47. The Policy created a duty of good faith and fair dealing upon Carolina for Fast Trac's benefit.

48. Fast Trac relied on Carolina's good faith that it would afford it commercial automobile liability coverage for the entire Policy Term.

49. Carolina has breached its duty of good faith and fair dealing because it wrongfully cancelled the Carolina Policy without a reasonable basis to do so and Carolina knew or should have known that fact.

50. Carolina's breach of this duty caused injury to Fast Trac for which it seeks all allowable amounts of damages and attorneys' fees, which are within the jurisdictional limits of this Court. *See*, **Damages** section below.

51. **Exemplary Damages.** Fast Trac's injury resulted from Carolina's gross negligence which entitles it to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a) and *Transp. Ins. Co. v. Moriel*, 879 S.W. 2d 10 (Tex. 1994).

## VII.
## DAMAGES AND ATTORNEYS' FEES

52. Carolina's knowing and/or intentional violations of law, breaches of contract and duties have caused injury to Fast Trac.

53. Fast Trac is entitled to recover, cumulatively or in the alternative:

   a. Actual and/or Economic damages pursuant to Tex. Bus. & Com. Code § 17.50(b)(1) and Tex. Ins. Code § 541.152(a);

   b. Treble Actual and/or Economic damages pursuant to Tex. Bus. & Com. Code § 17.50(b)(1) and (h) and Tex. Ins. Code 541.152(b);

   c. Damages resulting from breach of contract;

    d.  Damages resulting from breach of duty of good faith and fair dealing;

    e.  Exemplary damages due to gross negligence pursuant to Tex. Civ. Prac. & Rem. Code § 41.003(a) and *Transp. Ins. Co. v. Moriel*, 879 S.W. 2d 10 (Tex. 1994);

    f.  Prejudgment interest;

    g.  Post judgment interest;

    h.  All applicable litigations and court costs; and

    i.  Reasonable and necessary attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code §§ 38.001(8), Tex. Bus. & Com. Code § 17.50(d), and Tex. Ins. Code §§ 541.152(a) and 542.060(b).

54.    In addition to the aforementioned, Fast Trac also seeks any and all other remedies available to it and to which it is entitled to, both general and special, in law and/or equity.

## VIII.
## JURY DEMAND

55.    Pursuant to Tex. R. Civ. P. 216, Fast Trac requests a trial by jury. Payment for the jury fee has been tendered.

## VIII.
## REQUEST FOR DISCLOSURE

56.    Pursuant to Tex. R. Civ. P. 194, Fast Trac requests that Carolina disclose, within 50 days of the service of this Request, the information or material described therein.

## PRAYER

Plaintiff, Fast Trac Transportation, LLC, prays that it be granted all relief to which it is entitled to as detailed in the **Damages** section above.

Respectfully submitted,

**THE FUENTES FIRM, P.C.**

*/s/ Robert Fuentes*
ROBERT FUENTES
State Bar No. 24005405
SADI R. ANTONMATTEI-GOITIA
State Bar No. 24091383
5507 Louetta Road, Suite A
Spring, Texas 77379
Telephone: (281) 378-7640
Facsimile: (281) 378-7639
robert@fuentesfirm.com
sadi@fuentesfirm.com
**ATTORNEYS FOR PLAINTIFF**
**FAST TRAC TRANSPORTATION, LLC**

**CERTIFICATE OF SERVICE**

Pursuant to Tex. R. Civ. P. 21(d), a true and correct copy of the foregoing has been served upon all counsel of record in accordance on November 18, 2019.

*/s/ Robert Fuentes*
ROBERT FUENTES

13